# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MURDER ACCOUNTABILITY PROJECT** (a Virginia non-profit organization) | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| **U.S. DEPARTMENT OF JUSTICE** 950 Pennsylvania Avenue, NW Washington, DC 20530 | ) ) ) ) | |
| **FEDERAL BUREAU OF INVESTIGATION** 935 Pennsylvania Avenue, NW Washington, DC  20535 | ) ) ) ) | |
| **U.S. DEPARTMENT OF DEFENSE** 1400 Defense Pentagon Washington, DC 20301-1400 | ) ) ) ) | |
| **U.S. DEPARTMENT OF THE INTERIOR** 1849 C Street, NW Washington, DC 20240 | ) ) ) ) | |
| **NATIONAL PARK SERVICE** 1849 C Street, NW Washington, DC 20240 | ) ) ) ) | |
| **BUREAU OF INDIAN AFFAIRS** 1849 C Street, NW Washington, DC 20240 | ) ) ) ) | |
| **U.S. NAVY** 1200 Navy Pentagon Washington, DC 20350-1200 | ) ) ) ) | |
| **U.S. ARMY** The Pentagon Washington, DC 20310 | ) ) ) ) | |
| **U.S. AIR FORCE** 1670 Air Force Pentagon Washington, DC 20330-1670 | **)** ) ) ) | |

**DEFENSE MANPOWER DATA CENTER**   )
1155 Defense Pentagon, Room 2C757   )
Washington, DC 20301-1155.   )
                                                        )
                      Defendants.     )
                                                        )

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT

Plaintiff Murder Accountability Project ("MAP"), a nonprofit organization incorporated in the Commonwealth of Virginia, by its undersigned attorneys, alleges as follows:

### Introduction

1. MAP brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., to enjoin the United States Federal Bureau of Investigation ("FBI"), the United States Department of Justice ("DOJ"), United States Department of Defense ("DOD"), the Department of the Interior ("DOI"), National Park Service ("NPS"), Bureau of Indian Affairs ("BIA"), United States Army ("ARMY"), United States Navy ("NAVY"), United States Air Force ("AIR FORCE"), and the Defense Manpower Data Center ("DMDC") from continuing to improperly withhold agency records that are responsive to FOIA requests made by MAP. MAP seeks crime data that these federal law enforcement agencies have in their possession, but have all failed to report pursuant to the Uniform Federal Crime Reporting Act of 1988 (34 U.S.C. § 41303) which became effective on January 1, 1989.

2. The Uniform Federal Crime Reporting Act of 1988 requires all federal law enforcement agencies, including those within the Department of Defense, to report crime data including homicides to the Justice Department. The Act further requires that the Justice Department "shall report" these data to all "institutions participating in the Uniform Crime Reports program." (34 U.S.C. § 41303)

2

3. Despite the passage of this federal law more than 32 years ago, in a May 22, 2019 letter to MAP, Michael D. DeLeon, FBI Assistant Director for Criminal Justice Information Services Division, conceded that the FBI has failed to report data about homicides and other major crimes it has investigated to the Uniform Crime Report (UCR) and its associated Supplementary Homicide Report (SHR), in violation of the Uniform Federal Crime Reporting Act of 1988. Mr. DeLeon advised that "**the FBI is taking the necessary steps to collect and report … data to the UCR Program to ensure compliance with the Uniform Federal Crime Reporting Act of 1988. The FBI expects to complete the process by the January 1, 2021 NIBRS** (National Incident Based Reporting System — a new reporting standard for UCR data) **transition deadline**." This correspondence is attached as Exhibit D. In addition, the Inspector General of the Army, in a report dated October 29, 2014, stated: "**DoD is not reporting criminal incident data to the Federal Bureau of Investigation (FBI) for inclusion in the annual Uniform Crime Reports to the President, the Congress, State governments, and officials of localities and institutions participating in the Uniform Crime Report Program, as required by Federal law. The FBI uses the data to develop a reliable set of criminal statistics for U.S. law enforcement agencies.**" See page 3 of https://media.defense.gov/2014/Oct/29/2001713419/-1/-1/1/DODIG-2015-011.pdf. On page 6 of this same Inspector General report, DOD Deputy Inspector Randolph R. Stone stated: "**We found DoD does not report criminal incident data to the Federal Bureau of Investigation (FBI) as required by the Uniform Federal Crime Reporting Act of 1988 and DoD Directive 7730.47.**"

4. The Freedom of Information Act "focuses on the citizens' right to be informed about 'what their government is up to,'" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *DOJ v. Reporters Comm. for*

*Freedom of the Press*, 489 U.S. 749, 750, 773 (1989) (citation omitted).  "[D]isclosure, not secrecy, is the dominant objective" of FOIA.  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, (2001) (internal quotation marks and citations omitted).

5. MAP plays a critical role in providing information to citizens about "what their government is up to."  Through its FOIA requests, MAP seeks to fulfill its goal of serving "as a leadership organization to educate Americans on the importance of accurately accounting for unsolved homicides in the United States" and "to obtain information from federal, state, and local governments about unsolved homicides and to publish such information." Murder Accountability Project Articles of Incorporation approved May 31, 2015.  MAP's Articles of Incorporation further authorize MAP to employ "Freedom of Information Act requests and lawsuits, when necessary, to obtain information about homicides not reported" to the federal Uniform Crime Report (UCR) and Supplementary Homicide Report (SHR), which is part of the UCR. Murder Accountability Project Articles of Incorporation approved May 31, 2015.

6. MAP believes the failure of federal agencies to observe the Uniform Federal Crime Reporting Act of 1988 or to comply with MAP's FOIA requests has significantly hampered the nation's understanding of the challenges it faces from homicide and, in particular, unsolved homicide. This reporting failure specifically has thwarted attempts by federal and state officials and public safety advocates to determine whether abnormal numbers of Native American girls and women have been murdered and whether these murders occur in patterns that should be addressed by law enforcement. This failure to fully report the occurrence of homicides prevents national awareness of the size and scope of the challenges to public safety and of whether additional resources should be provided to law enforcement.

4

**Jurisdiction and Venue**

7.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B).  This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

8.      Plaintiff, MAP, is a nonprofit organization incorporated in the Commonwealth of Virginia on June 16, 2015 and recognized by the Internal Revenue Service as a tax exempt 501(c)(3) corporation on August 7, 2015.   MAP has developed a computer algorithm that can identify previously unrecognized serial homicides using the homicide data MAP has obtained.  As one recent example of MAP's work, the Chicago Police Department and the FBI have formed a task group currently reviewing 51 unsolved strangulations of women identified by MAP's algorithm.  In 2017, a profile of MAP's work was featured in *The New Yorker*.  See *The Serial-Killer Detector:  A former journalist, equipped with an algorithm and the largest collection of murder records in the country, finds patters in crime*.
https://www.newyorker.com/magazine/2017/11/27/the-serial-killer-detector

9.      Defendant Federal Bureau of Investigation ("FBI") is a component of Defendant U.S. Department of Justice, itself a component of the Executive Branch of the United States Government.  Defendants are each an "agency" within the meaning of 5 U.S.C. § 552(f).

10.     Defendants U.S. Department of Defense,  U.S. Army,  U.S. Navy,  U.S. Air Force and the Defense Manpower Data Center are each an "agency" within the meaning of 5 U.S.C. § 552(f).

11. Defendant U.S. Department of the Interior and its sub-agencies, Defendant National Park Service and Defendant Bureau of Indian Affairs are each an "agency" within the meaning of 5 U.S.C. § 552(f).

## Statutory and Regulatory Background

12. The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

13. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head.  5 U.S.C. § 552(a)(6)(A)(i).

## MAP's Request for Release of Native American Murder Data and Defendants' Denial or Non-Response to MAP's FOIA Requests

14. In January of 2019, officials with the U.S. Interior Department contacted MAP officials seeking data about unsolved homicides involving indigenous girls and women — a topic of concern among Native American rights advocates that has led to government-sponsored research in several states.  The Urban Indian Health Institute last year published a study that was critical of the poor quality of official data on unsolved homicides within this community. http://www.uihi.org/wp-content/uploads/2018/11/Missing-and-Murdered-Indigenous-Women-and-Girls-Report.pdf.  See also National Public Radio broadcast on this subject: https://www.npr.org/2019/07/23/743659569/7-states-step-up-efforts-to-fight-violence-against-indigenous-women.

15. In connection with this request for information about unsolved homicides involving indigenous girls and women, MAP leaders met with Interior officials, including Assistant Secretary for Indian Affairs Tara Sweeney, on February 4, 2019, at the Interior

6

Department's national headquarters. MAP leaders reported that half of all Native American homicides reported to the Centers for Disease Control and Prevention were not reported in the FBI's Supplementary Homicide Report, a part of the Uniform Crime Report.  During the period 1999 through 2017, this amounted to more than 2,400 unreported murders.

16. Interior officials asked MAP to publish its study of unreported homicides at the Project's website ([www.murderdata.org](www.murderdata.org)), stating that publicity about the reporting failures "will help us" to fix the reporting problem. MAP complied on March 14 and published its study listing states and individual counties with significant numbers of Native American homicides that were not reported to the FBI's SHR.  [This report is attached as Exhibit G.]

17. In the following weeks, journalists contacted MAP to report they had identified specific cases of Native American homicides that were not found in MAP's online SHR, all of which had been investigated by the FBI as lead investigative agency. For example, see Billings Gazette article ([https://billingsgazette.com/news/state-and-regional/mmiw/native-american-homicide-rates-are-soaring-but-causes-aren-t/article_cd39d5e5-0bae-5f6d-9da5-994e3e8bdbd6.html](https://billingsgazette.com/news/state-and-regional/mmiw/native-american-homicide-rates-are-soaring-but-causes-aren-t/article_cd39d5e5-0bae-5f6d-9da5-994e3e8bdbd6.html)) and The Salt Lake Tribune article ([https://www.sltrib.com/news/politics/2019/07/23/activists-highlight/](https://www.sltrib.com/news/politics/2019/07/23/activists-highlight/)) . MAP officials confirmed these homicides had not been reported in the SHR.  The discovery of these missing data led MAP to be concerned about whether data was missing beyond homicide information concerning Native Americans.

18. On April 26, 2019, MAP filed six Freedom of Information Act requests with the FBI, the National Park Service, the Bureau of Indian Affairs, the Department of the Army, the Department of the Navy and the Department of the Air Force.   Each FOIA request sought unreported UCR and SHR data going back to January 1, 1989, when the Uniform Federal Crime Reporting Act of 1988 went into effect.  All requests cited both the Freedom of Information Act

and the Uniform Federal Crime Reporting Act of 1988.  MAP made these requests to obtain access to homicide information in the possession of all of the federal agencies that currently investigate murders in the United States.  Attached as Exhibit A is a copy of the six FOIA requests.

19. On April 23, 2019, David M. Hardy, the section chief of the FBI's Record/Information Dissemination Section of the Information Management Division, wrote a letter to MAP stating the request for crime data qualified for an "unusual circumstances" exemption from the law which requires a determination within 20 days. The three cited reasons for the exemption were: need to search for and collect records from field offices, need to search a voluminous amount of records, and a need for "consultation with another agency or two or more DOJ components."  This correspondence is attached as Exhibit B.

20. On May 17, 2019, the Naval Criminal Investigative Service telephoned and e-mailed MAP to report the Navy has provided data on homicides and other major crimes to the Defense Incident-Based Reporting System (the equivalent to the FBI's National Incident-Based Reporting System or NIBRS) for many years.  MAP is informed and believes that the data are maintained by the Defense Manpower Data Center.  This email correspondence is attached as Exhibit C.

21. On May 22, Michael D. DeLeon, Assistant Director of the FBI's Criminal Justice Information Services Division wrote a letter to MAP stating that "the FBI is taking the necessary steps to collect and report NIBRS data to the UCR Program to insure compliance with the Uniform Federal Crime Reporting Act of 1988." This process was expected to be completed by January 1, 2021. "We hope this explanation satisfactorily addresses your concerns." No offer was made to provide MAP with crime data from Jan. 1, 1989 to the present.  This correspondence is attached as Exhibit D.

22. On May 26, 2019, MAP's Board of Directors unanimously voted to file a lawsuit under the Freedom of Information Act, but instructed that a 30-day pause be observed to encourage FBI officials to consider a negotiated settlement. On May 28, MAP distributed by overnight mail a letter to FBI Director Christopher A. Wray and to three other FBI officials to notify them that MAP's Board had authorized a lawsuit but would "delay legal action for 30 days to seek a meeting with FBI representatives to discuss our data requirements." This correspondence is attached as Exhibit E.

23. On June 6, 2019, David M. Hardy, the section chief of the FBI's Record/Information Dissemination Section of the Information Management Division, wrote a letter to MAP that stated, in part: "The FOIA does not require federal agencies to answer inquiries, create records, conduct research or draw conclusions about queried data. Rather the FOIA requires agencies to provide access to reasonably described, nonexempt records. The questions posed in the referenced letter are not FOIA requests because they do not comply with the FOIA and its regulations. Therefore, your request is being administratively closed." This letter did not acknowledge that data sought by MAP are required to be released to the public under FOIA as well as the Uniform Federal Crime Reporting Act of 1988. This correspondence is attached as Exhibit F.

24. On July 19, 2019, Mr. Hardy sent two DVDs to MAP. The DVDs contained historical UCR and SHR data going back many decades. This is the same data that FBI has released to MAP in the past and is not responsive to MAP's FOIA request to the FBI at issue here. MAP has not received any additional responses from the FBI or from other defendant agencies.

25. MAP is informed and believes that the FBI data sought by MAP and mandated by the Uniform Federal Crime Reporting Act of 1988 are available in the FBI's files including its

SENTINEL information retrieval system which, according to FBI's official report about this system, maintains all of the necessary information components (such as homicide victim's age, race and sex, date and location of crime, etc.) necessary to satisfy the FBI's reporting obligations.  According to the FBI, "In conducting investigations, employees of the Federal Bureau of Investigation (FBI) are required to record all activity and document all information using case files.  The case file is the central system for holding these records and managing investigative resources. As a result, the case file includes documentation from the inception of a case to its conclusion. The FBI uses the case file to manage all criminal and intelligence gathering activities, as well as for personnel (support) and administrative matters."
See: https://www.fbi.gov/services/information-management/foipa/privacy-impact-assessments/sentinel

26. MAP is informed and believes that the Department of Defense data sought by MAP and mandated by the Uniform Federal Crime Reporting Act of 1988 are available in the Defense Incident-Based Reporting System which is maintained by the Defense Manpower Data Center.

27. The Bureau of Indian Affairs and National Park Service have not responded in any way to MAP's FOIA requests.  However, MAP is informed and believes that the data it seeks are mandated by the Uniform Federal Crime Reporting Act of 1988 and are available in the files of these agencies.

28. MAP is informed and believes that the National Park Service, through its U.S. Park Police, reported several homicides in the 1970s but ceased making reports to either the UCR or SHR from 1980 onward.

29. MAP has exhausted the applicable administrative remedies with respect to its Request for agency records maintained by the Defendants.

## PLAINTIFFS' CLAIM FOR RELIEF

### COUNT I
### (Failure to Produce Documents)

30. Plaintiff repeats and re-alleges paragraphs 1- 29.

31. MAP properly asked that the FBI, DOJ, DOD, DOI, NPS, BIA, NAVY, ARMY, AIR FORCE and DMDC to produce all UCR index crimes data and SHR case summary data for crimes investigated by the FBI, DOJ, DOD, DOI, NPS, BIA, NAVY, ARMY, AIR FORCE and DMDC from January 1, 1989, (when the reporting law went into effect) to the present.

32. Defendants FBI, DOJ, DOD, DOI, NPS, BIA, NAVY, ARMY, AIR FORCE and DMDC denied MAP's Requests in full and failed to produce any documents or data responsive to MAP's FOIA Requests.

33. MAP has a statutory right to the agency records they requested of the FBI, DOJ, DOD, DOI, NPS, BIA, NAVY, ARMY, AIR FORCE and DMDC under the FOIA, and there is no legal basis for Defendants to withhold the records.

34. As a result of the actions complained of herein, MAP was denied access to records which it was entitled to review in violation of the FOIA and as required by the Uniform Federal Crime Reporting Act of 1988.

35. MAP therefore is entitled to injunctive and declaratory relief with respect to the immediate processing and disclosure of the requested records.

### Requested Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Order defendants FBI, DOJ, DOD, DOI, NPS, BIA, NAVY, ARMY, AIR FORCE and DMDC to immediately and fully process MAP's FOIA requests and disclose all non-exempt documents immediately to MAP;

(2) Issue a declaration that MAP is entitled to immediate processing and disclosure of the requested records in a machine readable format whenever possible;

(3) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(4) Award Plaintiff their costs and reasonable attorneys' fees in this action; and

(5) Grant such other relief as the Court may deem just and proper.

Dated: August 15, 2019

Respectfully submitted,

*/s/ Ronald London*
Ronald London (D.C. Bar No. 456284)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
202-973-4280

Thomas R. Burke (*pro hac vice* pending)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
415-276-6500

*Counsel for Plaintiff* MURDER ACCOUNTABILITY PROJECT